IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY ALEXANDER,

    Plaintiff,                    No. CIV S-03-1014 LKK KJM P

    vs.

LIEUTENANT PLAINER, et al.,       <u>ORDER AND</u>

    Defendants.             <u>FINDINGS AND RECOMMENDATIONS</u>

                               /

          Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983, alleging that defendants Aguilera, Cook, Iannone, Nichols and Stiles used excessive force against him and that defendant Plainer offered to return some property to him if he would drop a grievance about the incident. Defendants have filed a motion for summary judgment.

I. <u>Summary Judgment Standards Under Rule 56</u>

          Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On March 9, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

II. Facts

There is little that is undisputed in this case, but the parties do agree that on November 26, 2002, plaintiff did not return to his cell after dinner. Amended Complaint (Am. Compl.) at 8[1]; Mem. P. & A. in Supp. Mot. for Summ. J. (MSJ), Ex. A (Attach. 1 at 30; Thompson incident report).[2] Plaintiff contends that he told Nichols, Aguilera and Iannone that he wanted to talk to a captain or a lieutenant because his cell was not sanitary and he had problems with his cell mate; defendants claim plaintiff simply refused two orders to return to his cell. Am. Compl. at 8; MSJ, Ex. A (Attach. 1 at 25) & Ex. H (Iannone Interrogatory Responses, No. 2).

The parties agree that plaintiff turned to allow Nichols and Aguilera to handcuff him, but disagree as to what happened next. Am. Compl. at 8; MSJ, Ex. A (Attach. 1 at 30). Plaintiff contends that Nichols, Aguilera and Iannone started to escort him to his cell, but when plaintiff again asked to speak to a captain or a lieutenant, Nichols grabbed plaintiff's left arm and took him to the ground. Am. Compl. at 8-9. According to defendants, Nichols and Aguilera took plaintiff to the ground after plaintiff turned away from being handcuffed and hit Nichols' hand.

---

[1] The court may consider the complaint, signed under penalty of perjury, as an affidavit in opposition to defendants' motion for summary judgment. Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000). Plaintiff's opposition to the motion for summary judgment is not signed under penalty of perjury nor is it supported by affidavits or other evidence.

[2] Exhibit A to the Motion for Summary Judgment consists of a number of documents from plaintiff's central file, offered with a foundational declaration as to their being records of regularly conducted activity. Fed. R. Evid. 803(6). Among these documents are incident reports prepared by correctional officers Plainer, Bare, Aguilera, Evert, Stiles, Turner, Nichols, Iannone, Reed, Pfadt, Roberts and Thompson. The court will not consider the reports by the defendants in this case--Plainer, Aguilera, Cook, Iannone, Nichols and Stiles--nor those by the officers who assert that they were involved in the second phase of the escort (officers Reed, Bare, Pfadt and Turner) because of the potential trustworthiness problems with their reports. See United States v. Spano, 421 F.3d 599, 603-04 (7th Cir. 2005) (public records lacked sufficient indicia of trustworthiness when prepared by defendants rather than by clerks assumed to be disinterested); Romano v. Howarth, 998 F.2d 101, 108 (2d Cir. 1993) (business record lacked sufficient indicia of trustworthiness when one of the defendants in the civil action was involved in its creation).

Defendants also rely on their verified responses to plaintiff's interrogatories, which is appropriate. Portis v. Dillard Store Services, Inc., 148 F.Supp.2d 1269, 1271 (M.D. Ala. 2001). The court declines to consider their responses to plaintiff's request for admissions, because these are not signed by the defendants under the penalty of perjury.

MSJ, Ex. A (Attach. 1 at 31); id., Ex. D (Aguilera Interrogatory Responses, Nos. 1, 9); id., Ex. H (No. 2); id., Ex. J (Nichols Interrogatory Responses, No. 2). Officers Reed and Iannone helped Nichols and Aguilera restrain the still-struggling plaintiff. MSJ, Ex. A (Attach. 1 at 31). Aguilera asked Officer Thompson for leg restraints and one of the officers sounded an alarm. Am. Compl. at 9; MSJ, Ex. A (Attach. 1 at 31); id., Ex. C (Aguilera Admissions) ¶ 5.

According to plaintiff, Nichols and Aguilera took him to the program office, while defendant Cook, walking behind, kicked the ankle restraints, causing them to tighten and bruise plaintiff's ankles. Am. Compl. at 9. Cook used a racial slur when plaintiff asked him why he was kicking the restraints. Id. Defendant Stiles arrived, but refused to intervene. When plaintiff protested the "cowardly acts," Aguilera and Nichols pushed plaintiff to the ground and Stiles put his foot on the back of plaintiff's neck; Cook twisted plaintiff's arm painfully toward his upper back. Id. The officers then carried plaintiff to the holding cell in the program office; Aguilera and Nichols rammed plaintiff's head into a wall. Id.

According to defendants, Officers Bare and Reed escorted plaintiff to the program office and took him to the ground when he attempted to pull forward and away from the officers. MSJ, Ex. A (Attach. 1 at 29, 31). Aguilera and Nichols were not involved in this escort and did not ram plaintiff's head into a wall. MSJ, Ex. A (Att. 1 at 29). Defendant Stiles did not put his foot on plaintiff's neck. MSJ, Ex. N (Stiles Interrogatory Responses, No. 6). Plaintiff continued to be uncooperative and struggled during the remaining escort to the program office. MSJ, Ex. A (Att. 1 at 31).

The nurse evaluated plaintiff after these events, noted slight swelling to his right wrist and an abrasion on his left hand and recorded plaintiff's complaints of pain in his ankles. MSJ, Ex. B (Attach. 1 at 1).

Plaintiff alleges that defendant Plainer told him that the incident had not been handled correctly and, several days later, offered to return some of plaintiff's property if plaintiff would drop his grievance about the incident. Am. Compl. at 9-10. According to Plainer, he did

5

1  not attempt to bribe plaintiff. MSJ, Ex. L (Plainer Interrogatory Responses, No. 4). Plaintiff
2  pursued his grievance nevertheless. MSJ, Ex. A (Attach. 1 at 48-57).
3  III. <u>The Eighth Amendment And Excessive Force</u>
4         Determining whether an Eighth Amendment violation has occurred depends on the
5  context in which the action takes place. Deference is to be given to the quick decisions officers
6  must make when responding to a confrontation with "riotous inmates." <u>Whitley v. Albers</u>, 475
7  U.S. 312, 320-22 (1986). A deferential standard applies even in the case of "a lesser disruption,"
8  so long as it is necessary for guards to use force to keep order. <u>Hudson v. McMillian</u>, 503 U.S. 1,
9  6 (1992). In the case of resistance, the determinative question is "whether force was applied in a
10 good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose
11 of causing harm." <u>Id</u>. at 7.
12        The Ninth Circuit has relied on the <u>Hudson</u> factors in determining whether an
13 officer's application of force was undertaken in a good faith effort to restore discipline or
14 maliciously and sadistically to cause harm. <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir.
15 2003). These factors are: 1) the extent of the injury suffered by an inmate; 2) the need for
16 application of force; 3) the relationship between that need and the amount of force used; 4) the
17 threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the
18 severity of a forceful response. <u>Id</u>.
19        According to the Ninth Circuit, <u>Hudson</u> mandates that the <u>Whitley</u> standard apply
20 in all claims of excessive force against prison officials. <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1453 &
21 n.2 (9th Cir. 1993). However, when there is no obvious disturbance, it is crucial to look at the
22 two elements of the Eighth Amendment inquiry. These elements are: 1) the deprivation must be
23 sufficiently serious and 2) the officer must have acted with a sufficiently culpable state of mind.
24 <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991); <u>LeMaire</u>, 12 F.3d at 1451.
25        An Eighth Amendment violation may be established even in the absence of
26 significant injury. <u>Hudson</u>, 503 U.S. at 9. "When prison officials maliciously and sadistically use

force to cause harm, contemporary standards of decency always are violated." Id. However, the deprivation, meaning the use of force,[3] must be more than *de minimis*. Id. at 9-10. The extent of the injury is therefore relevant to determine if the use of force is more than *de minimis*. Id. at 7 ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it").

Even though plaintiff did not suffer grievous injuries, plaintiff's wrist was swollen and painful and he complained of pain to his ankles. Compare Hudson, 503 U.S. at 10. Moreover, while defendants claim plaintiff refused an order to enter his cell and resisted his attempts to enforce compliance, the essence of plaintiff's claim is that there was no need for the application of force. A reasonable jury could find that if there was no need for the application of force, the degree of force applied exceeded the amount of force permissible. McLaurin v. Prater, 30 F.3d 982, 984 (8th Cir. 1994) (8th Amendment violation established when guard hit inmate accused of stealing cigarettes; inmate suffered pain but no permanent injury).

This case is similar to Jones-Bey v. Conley, 144 F.Supp.2d 1035 (N.D. Ind. 2000). In Jones-Bey, the inmate alleged that he was putting on his shoes in response to an order to cuff-up when guards entered his cell, slammed him to the floor, handcuffed him too tightly, and then continued to beat him. In the guards' account, after the inmate refused a second order to submit to handcuffing, officers extracted him from his cell and forced him to the floor only after he had attacked them. Id. at 1038-40. The court concluded that a jury could reasonably conclude that the officers' actions, as described by plaintiff, were not undertaken in a good faith effort to maintain discipline.

In this case as well, a jury could reasonably conclude that the officers' actions, as described by plaintiff, were not undertaken in a good faith effort to maintain discipline, but rather
/////

---

[3] The Ninth Circuit has recognized that the Hudson standard focuses on the nature of the force used. Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

7

were an exaggerated response to his assertion of his rights and that the force used therefore was excessive, despite the minor nature of plaintiff's injury.

Defendants argue that no rational jury could find for plaintiff because their version of the actions and the actors differs from plaintiff's and under their version, force was used, largely by people not named as defendants, in response to plaintiff's resistance. What defendants ask this court to do is make credibility determinations with respect to statements made in affidavits, answers to interrogatories, or other supporting evidence, which this court cannot do on summary judgment. Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1036 (9th Cir. 2005).

IV. Qualified Immunity

Defendants Stiles, Nichols, Aguilera, Cook and Iannone contend they are entitled to qualified immunity for their role, if any, in the events of November 26, 2002.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity exists. The court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. Id.

/////
/////
/////
/////

> If, however, a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.... 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'... The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The reasonableness of a defendant's conduct is judged "against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004). The defendant should not be subject to liability if the law at that time did not clearly establish that the defendant's actions would violate the Constitution. Id. The Supreme Court has emphasized that "the qualified immunity inquiry must be undertaken in light of the specific context of the case." Id.

In this case, there are triable issues of fact whether Nichols, Stiles, Aguilera, Cook and Iannone violated plaintiff's Eighth Amendment rights. Therefore, the qualified immunity analysis turns on whether it is "clearly established" that the particular manner in which the defendant could be found to have used excessive force violated the Eighth Amendment.

In Hudson v. McMillian, 503 U.S at 4, the plaintiff alleged that he argued with a prison guard, who thereafter punched and kicked him as plaintiff was taken to administrative segregation. As the Supreme Court noted, "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Id. at 9. Thus, at the time the incident occurred, it was clearly established that a malicious use of force, unrelated to restoring order, violated the Eighth Amendment, whether or not there was significant injury. Defendants are not entitled to qualified immunity.

/////

/////

V. Defendant Plainer's Role

Defendants argue that the complaint does not state a claim against defendant Plainer because there is no constitutional prohibition against his request that plaintiff not pursue his grievance and no constitutional prohibition against his locating plaintiff's property after plaintiff suggested he might drop the grievance if it were located.

An inmate's right to petition the government for the redress of grievances extends to the pursuit of inmate administrative remedies. Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988); Hines v. Gomez, 853 F.Supp. 329, 331 (N.D. Cal. 1994). Accordingly, "efforts by state actors to impede an individual's access to . . . administrative agencies may provide the basis for a constitutional claim," Cefalu v. Village of Elk Grove, 211 F.3d 416, 422 (7th Cir. 2000), even if those efforts are not successful. Silver v. Cormier, 529 F.2d 161, 163 (10th Cir. 1976). The inference to be drawn from plaintiff's verified complaint is that Plainer offered to find plaintiff's misplaced property as a quid pro quo to plaintiff's abandoning his grievance against the officers who allegedly used force. This is sufficient to state a constitutional violation.

VI. Plaintiff's "Pitchess" Motion

Plaintiff has filed a motion to inspect the officer defendants' files for any past complaints of excessive force or false statements.[4] This is a discovery motion, but was filed after the last date to file discovery-related motions, which was January 20, 2006. Plaintiff has made no showing why the motion was not timely filed.

IT IS HEREBY ORDERED that plaintiff's request to schedule a Pitchess motion (docket no. 93) is denied.

/////

/////

---

[4] In California criminal practice, this is called a "Pitchess motion." Pitchess v. Superior Court, 11 Cal.3d 531 (1974); see Cal. Evid. Code §§ 1043-1045; Cal. Penal Code §§ 832.7 & 832.8.

1       IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment be denied.

2       These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 23, 2007.

_____
U.S. MAGISTRATE JUDGE

2
alex1014.57x2